**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 15, 2022**

# In the Court of Appeals of Georgia

A22A0141. YOUD v. BESKIN et al.

REESE, Judge.

The Superior Court of Fulton County entered a default judgment against Steven Youd ("Appellant") in favor of James and Elizabeth Beskin ("Appellees"), and Appellant filed a motion to open default. The trial court subsequently entered a final judgment against Appellant, and denied his motion to open default. This appeal followed. For the reasons set forth infra, we affirm in part and vacate in part, and remand this case with direction.

The record shows that Steven and Anna Youd (the "Youds") and Appellees shared a common boundary between their properties. In January 2016, the retaining wall on the Youds' property collapsed, sending debris onto Appellees' property.

Although there were discussions concerning repairing the wall, when the Youds failed to take action, Appellees filed suit against the Youds on August 15, 2019.

Anna Youd was personally served on August 20, 2019, and she subsequently filed an answer and affirmative defenses. Upon learning that the Youds had divorced, Appellees attempted to serve Appellant at his separate address through private process servers in November 2019 and January 2020. However, the process servers were unable to serve Appellant, and an affidavit of due diligence from one server stated that Appellant appeared to be "evading service." Appellees also utilized the Fulton County Sheriff to serve Appellant, but the Sheriff's department stated that they were also unable to perfect service on Appellant despite several attempts.

In March 2020, Appellees filed an affidavit of service stating that Appellant was successfully served on March 16 when Appellant reported for trial at the Atlanta Municipal Court. The process server's affidavit stated that

> [t]he court was closed but the[ court] did not have any information about the[ ] closure on the website so [the process server] waited to see if [Appellant] would show up. At 8:05 [a.m.], [the process server] saw a man who looked like the photo the [Appellees] had provided and [Appellant] also turned around when [the process server] said his name. When he saw that [the process server] had documents to give him he refused to take them from [the process server's] hand. [The process

2

server] explained in a loud voice what the papers were for and left them at [Appellant's] feet.

The affidavit also described Appellant as a Caucasian male in his thirties weighing 170 pounds and standing five-foot-seven inches tall with brown hair.

The trial court "inadvertently" overlooked this filing by Appellees and entered an order directing that service be perfected upon Appellant within 30 days of the date of the order. Appellees filed a notice of service of process stating that service had been perfected on Appellant, and attached the previous affidavit of service attesting that Appellant had been served on March 16, 2020. Appellees then moved for default judgment against Appellant, which the trial court granted.

The trial court subsequently held a hearing on damages. Although Appellees and Anna Youd attended, Appellant did not participate. Following the hearing on damages and more than three months after the court's default judgment, Appellant filed a motion to open default. The trial court entered a final judgment against Appellant the next day, awarding Appellees damages totaling $667,593, as well as injunctive relief, and shortly thereafter, entered an order denying Appellant's motion to open default. The Appellant now appeals.

3

Where a defendant claims there was a failure of service, the trial court has the authority to decide as a factual matter whether service has occurred. This finding will not be disturbed as long as there is some evidence to support it. Further, when a defendant in a lawsuit challenges the sufficiency of service, he bears the burden of showing improper service. The process server's return of service can only be set aside upon evidence which is not only clear and convincing, but the strongest of which the nature of the case will admit.[1]

When considering a trial court's ruling on a motion to open a default,

[i]t is not arguable as a proposition of law that the decision whether to open a default judgment falls squarely within the discretionary powers of the trial court granting or denying the same. The exercise of this

---

[1] *Newsome v. Johnson*, 305 Ga. App. 579, 581 (1) (699 SE2d 874) (2010) (citations and punctuation omitted). Although Appellant argues that the proper standard of review on this issue is de novo because the question of whether a judgment is void or voidable is a question of law, that is not the issue presented here. This claim of error centers around whether Appellant was properly served, and such determinations are factual matters decided by the trial court and will not be disturbed as long as there is some evidence to support the trial court's ruling. Id. Moreover, the case cited by Appellant is inapplicable to the present matter, as *Williams v. Willis* involved the question of whether a South Carolina judgment made a Georgia judgment duplicative and therefore void. See 340 Ga. App. 740, 742 (798 SE2d 323) (2017). Further, *Williams* was physical precedent only and not binding on this Court. See Court of Appeals Rule 33.2 (a) (2).

discretionary power should not excite interference by a reviewing court unless the trial court manifestly abuses the discretion vested within it.[2]

"On appellate review of a bench trial, we must affirm the court's award of damages if there is any evidence showing with reasonable certainty the amount of damages. So long as the award is within the range of the evidence adduced, we will affirm the trial court's judgment."[3] With these guiding principles in mind, we now turn to Appellant's claims of error.

1. Appellant argues that the trial court erred in entering a final judgment as it did not have personal jurisdiction over him due to Appellees' failure to properly serve Appellant.

OCGA § 9-11-4 (e) states that "[e]xcept for cases in which the defendant has waived service, the summons and complaint shall be served together. . . . Service shall be made by delivering a copy of the summons attached to a copy of the

---

[2] *Fulton County Hosp. Auth. v. Hyman*, 189 Ga. App. 613, 614 (1) (376 SE2d 689) (1988) (citation and punctuation omitted); see also *COMCAST Corp. v. Warren*, 286 Ga. App. 835, 838 (1) (650 SE2d 307) (2007) (reviewing the denial of a motion to open default for an abuse of discretion).

[3] *Jimenez v. Chicago Title Ins. Co.*, 310 Ga. App. 9, 15 (3) (b) (712 SE2d 531) (2011) (punctuation and footnote omitted).

complaint . . . to the defendant personally[.]" When considering claims of a failure of service, this Court has held,

> the question of whether evidence is sufficient to overcome facts reflected in a return of service is a matter addressed to the discretion of the trial court. Indeed, a return of service is prima facie evidence of personal service, and it may only be set aside when the defendant presents evidence that is the strongest of which the nature of the case will admit. Furthermore, factual disputes regarding service of process are to be resolved by the trial court, and the court's findings will be upheld if there is any evidence to support them.[4]

Here, the process server hired by Appellees made multiple attempts to serve Appellant at his address and noted that it appeared Appellant was "evading service[.]" After these unsuccessful attempts, the record shows that the process server went to the Atlanta Municipal Court on a day Appellant was scheduled to appear, located a person fitting Appellant's description who responded to the Appellant's name, and when the individual refused to accept the documents, the process server left them at his feet. Although Appellant asserted in his affidavit that he was not at the court on the day in question, and that he was including as an exhibit correspondence from the

---

[4] *Cosby v. Lewis*, 308 Ga. App. 668, 673 (2) (708 SE2d 585) (2011) (punctuation and footnotes omitted).

6

court informing him that his hearing had been canceled, he did not attach any document supporting this assertion. Therefore, as the trial court is given deference to resolve factual disputes regarding issues surrounding the service of process, and there was some evidence supporting the fact Appellant was properly served, the trial court did not abuse its discretion.

Additionally, although Appellant cites *Space Coast Credit Union v. Groce*,[5] that case is distinguishable from the present matter. In *Space Coast Credit Union*, this Court upheld the trial court's ruling that service of process was not sufficient when a server went to the defendant's nursing home and left the documents on a table next to the defendant's bed while he was "in and out of consciousness[.]"[6] In contrast, here the process server asserted that he saw a person fitting Appellant's description, that he informed him of "what the papers were for[,]" and that Appellant refused to accept them. Thus, *Groce* is distinguishable as here Appellant was alert and informed of the papers' purpose. Therefore, we affirm the trial court's ruling.[7]

[5] 337 Ga. App. 24 (785 SE2d 663) (2016).

[6] Id. at 25, 28 (2).

[7] See *Carroll v. Celanese Corp. of America*, 205 Ga. 493, 493 (2) (54 SE2d 221) (1949) (holding that personal service would be valid if a deputy sheriff informed the defendant he had documents for her and after defendant refused to accept them

7

2. Appellant argues that the trial court erred in denying his motion to open default pursuant to OCGA § 9-11-55. Specifically, Appellant argues that the court should have opened the default because his failure to file an answer was due to a providential cause as he was never properly served.[8]

> Under OCGA § 9-11-55(b), a prejudgment default may be opened on one of three grounds if four conditions are met. The three grounds are: (1) providential cause, (2) excusable neglect, and (3) proper case; the four conditions are: (1) showing made under oath, (2) offer to plead instanter, (3) announcement of ready to proceed with trial, and (4) setting up a meritorious defense. The question of whether to open a default on one of the three grounds noted above rests within the discretion of the trial judge.[9]

---

the deputy sheriff dropped the papers at the defendant's feet); *Cosby*, 308 Ga. App. at 673-674 (2); *Newsome*, 305 Ga. App. at 583 (1) ("[I]t is generally held that if the process server and the defendant are within speaking distance of each other, and such action is taken as to convince a reasonable person that personal service is being attempted, service cannot be avoided by physically refusing to accept the summons.").

[8] Although Appellant references both providential cause and excusable neglect generally as grounds to open the default judgment, the argument section of his brief only asserts that he was "providentially hindered" from responding.

[9] *Collier v. Cawthon*, 256 Ga. App. 825, 826 (1) (570 SE2d 53) (2002) (citations and punctuation omitted),

Here, Appellant's sole basis for opening the court's default was that he was never served. However, as discussed supra, the evidence supports the trial court's conclusion that Appellant was properly served in March 2020. As this rationale for Appellant's failure to respond to Appellees' complaint has been found unpersuasive, and Appellant does not cite any other facts demonstrating that he was prevented from responding by some providential cause "over which [Appellant] or his attorney had no control,"[10] we conclude that the trial did not manifestly abuse its discretion in denying Appellant's motion to open default.[11]

---

[10] *Bowen v. Savoy*, 308 Ga. 204, 207 (839 SE2d 546) (2020).

[11] Although the trial court did not expressly address the issue of whether Appellant made a showing of a meritorious defense, we note that Appellant only asserted that he had various meritorious defenses, including but not limited to, cross-claims against Anna Youd and affirmative defenses of unclean hands, laches, contributory negligence, and failure to mitigate damages, which he would plead with more particularity in his answer, defenses, and cross-claim upon the opening of the default. However, Appellant never elaborated on these alleged defenses. To establish a meritorious defense, "a defendant must demonstrate that the outcome of the case may be different if the motion [was] granted[,]" and "in making that showing, a defendant . . . must set forth facts that establish the essential elements of a meritorious defense." *Butterworth v. Safelite Glass Corp.*, 287 Ga. App. 848, 849 (1) (652 SE2d 877) (2007) (punctuation and footnote omitted). However, "absent the showing of a meritorious defense, a trial court has no discretion to open a default." Id. Thus, even assuming arguendo that Appellant established a providential cause that prevented him from filing a timely response, his failure to cite any facts supporting a meritorious defense would have barred the trial court from opening the default. See *Water Visions Intl. v. Tippett Clepper Assoc.*, 293 Ga. App. 285, 287 (2) (666 SE2d 628) (2008)

3. Appellant argues that the trial court erred in issuing a final order awarding damages to Appellees that were vague, ambiguous, speculative and constituted a double recovery.

As an initial matter, we address Appellees' argument that we should not consider this claim of error as Appellant did not raise these issues before the trial court, and the court did not have an opportunity to consider them. "As a rule, an appellate court will not consider arguments raised for the first time on appeal. But a claim that a verdict was an impermissible double recovery as a matter of law is an exception to this rule[.]"[12] Thus, we will examine Appellant's assertion that the trial court's final judgment contained impermissible double recoveries, but we consider all other assertions in this claim of error waived as he is raising them for the first time on appeal.

The Supreme Court of Georgia, when discussing a double recovery of damages, has held that

(affirming trial court's denial of a motion to open default where the motion was devoid of facts and details establishing a meritorious defense).

[12] *City of Roswell v. Bolton*, 271 Ga. App. 1, 8 (5) (608 SE2d 659) (2004) (citations omitted).

Georgia, as part of its common law and public policy, has always prohibited a plaintiff from a double recovery of damages; the plaintiff is entitled to only one recovery and satisfaction of damages, because such recovery and satisfaction is deemed to make the plaintiff whole. Accordingly, a plaintiff is not entitled to an award of both the diminution in market value and costs to restore for the same injury occasioned by the same trespass and nuisance.[13]

However, the Supreme Court later clarified that it "did not rule [in *Lusk*[14]] that Georgia law precludes a diminution in value award in addition to restoration and repair costs where the repair does not fully restore the property to its pre-damage value."[15] More specifically,

[a]lthough unusual, it may sometimes be appropriate, in order to make the injured party whole, to award a combination of both measures of damages. In such cases, notwithstanding remedial measures undertaken by the injured party, there remains a diminution in value of the property, and an award of only the costs of remedying the defects will not fully compensate the injured party.[16]

---

[13] *Georgia Northeastern R. Co. v. Lusk*, 277 Ga. 245, 246 (1) (587 SE2d 643) (2003) (citation omitted).

[14] 277 Ga. 245.

[15] *Royal Capital Dev.*, 291 Ga. 262, 266 (2) (728 SE2d 234) (2012).

[16] Id. at 265 (1) (citations and punctuation omitted).

Here, three of the trial court's awards are at issue as possible double recoveries. In its final judgment against Appellant, the trial court granted Appellees' requests for $270,000 as the loss of the property's value due to the wall's collapse, and $200,000 to allow Appellees to build a replacement wall on their property to prevent further damage to their land. The trial court also reentered its previous injunction requiring Appellant to remove dirt and stone from Appellees' property as a result of the collapse and to repair and restore the retaining wall to a condition that would prevent another collapse.[17]

The intent of such awards is to "place an injured party, as nearly as possible, in the same position it would have been if the injury had never occurred."[18] However, this goal would be accomplished by either the trial court's award of the loss of value in Appellees' land or by the injunction requiring Appellant to remove the debris from their property and repair and restore the collapsed wall. Both of these awards aim to accomplish the goal of making Appellees whole after the collapse of Appellant's wall. Further, there is no evidence presented that complete repair of the retaining wall

[17] Although the trial court also awarded Appellees other damages, we do not review this portion of the judgment as these were not challenged by Appellant.

[18] *Royal Capital Dev.*, 291 Ga. at 264 (1).

by Appellant would not "fully restore the property to its pre-damage value[,]"[19] thereby creating an exception to the general prohibition against awarding both the diminution in market value and the cost of restoring the property based on the same injury.[20] Thus, we conclude that the award of the loss of value in the property and the injunction requiring Appellant to rebuild the wall constituted an impermissible double recovery.

Additionally, although the award of the cost for Appellees to build a retaining wall on their property and the injunction requiring Appellant to rebuild the retaining wall on his property is slightly more nuanced, we conclude that these awards also constitute a double recovery.[21] As noted above, nothing in the record suggests that the

---

[19] Id. at 266 (2).

[20] See id.; *Lusk*, 277 Ga. at 246-247 (1). Although Appellees cite *DeKalb County v. Heath*, 331 Ga. App. 179 (770 SE2d 269) (2015), for the proposition that one may receive an award of diminution in value and the cost of preventing further damage to one's property, that case is distinguishable. In *Heath*, the trial court issued two awards in two separate actions, namely an award of the diminished value of the landowner's property due to flooding and erosion before the retaining wall failed, and subsequently the costs of repairing the wall after it failed. Id. at 182 (1). As this Court noted in *Heath*, "the two actions did not share identical causes of action, and the present action involved a fresh nuisance[.]" Id. Here, in contrast, both remedies stemmed from the collapse of the retaining wall.

[21] See *Marvin Nix Dev. Co. v. United Community Bank*, 302 Ga. App. 566, 568 (692 SE2d 23) (2010) (holding that a party "is not permitted a double recovery of the

13

repair and replacement of Appellant's wall would fail to restore Appellees to their previous position. Rather, building the retaining wall on Appellees' land appears intended to prevent further damage to Appellees' property in the event Appellant fails to comply with the injunction.[22] Put another way, the grant of both awards would not return Appellees to "the same position [they] would have been if the injury had never occurred[,]"[23] but would provide Appellees with a rebuilt retaining wall on Appellant's property, in addition to a new retaining wall on their own property.[24]

For the above reasons, we conclude that the trial court erred in awarding Appellees collectively the loss of value in their property, the cost of building a

---

same damages") (citation and punctuation omitted).

[22] Appellees stated that the purpose of the wall was to prevent "further encroachment by Appellant's earth, concrete, granite blocks, and other debris onto their property[,]" and noted that as of the time of the appeal, 68 months had passed since Appellant's wall had collapsed. Appellees also stated in their memorandum in support of damages against Appellant that "the [trial court] reasonably can conclude that the [Youds] will not replace their retaining walls before [Appellees] suffer further property damage and personal injury." Moreover, James Beskin stated at the damages hearing that "[h]e would anticipate building [the retaining wall on his property], if [the Youds] don't fix theirs[.]"

[23] *Royal Capital Dev.*, 291 Ga. at 264 (1).

[24] See *Lusk*, 277 Ga. at 246 (1) ("[T]he plaintiff is entitled to only one recovery and satisfaction of damages, because such recovery and satisfaction is deemed to make the plaintiff whole.").

retaining wall on their property, and injunctive relief requiring Appellant to repair and restore the wall on his property. Thus, we vacate the trial court's award of these three remedies only, and remand the case for further consideration consistent with this opinion. The remaining damages awarded by the trial court remain unchanged.

*Judgment affirmed in part and vacated in part, and case remanded with direction. Doyle, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*